PETER GALLO *vs.* SIMPSON SPRING COMPANY.

MARY GALLO, p. a. *vs.* SAME.

DECEMBER 27, 1935.

PRESENT: Flynn, C. J., Moss, Baker, and Condon, JJ.

CONDON, J. These cases were tried together in the superior court for Providence county before a justice of said court sitting with a jury. The actions are trespass on the case for negligence. The verdict of the jury in each

case was for the plaintiff, and these verdicts have been approved by the trial justice after hearing on defendant's motion for a new trial in each case.

These cases are before us on defendant's bills of exceptions, the exceptions being the same in each case, namely, to the refusal of the trial justice to direct a verdict in its favor, to his refusal to charge the jury as requested, to certain parts of the charge as given, and to the denial of its motion for a new trial. We shall consider in this order the points raised by the defendant and take up first the case of Mary Gallo.

The defendant contends that a review of the evidence will show none upon which the jury could reasonably find a verdict for the plaintiff, and upon this contention it rests its first exception. It appears from the record that the plaintiff, a child of two and one half years, was standing beside her mother at the rear of an ice wagon which was stopped on the easterly side of Dean street between Broadway and Carpenter street in the city of Providence when a truck, belonging to the defendant and driven by one of its employees, collided with the plaintiff, causing serious and permanent injury to her.

The defendant contends that the only reliable testimony as to how the accident happened is to the effect that the plaintiff suddenly stepped out or ran out from behind the ice wagon into the path of defendant's truck, and that its driver promptly turned to the right to avoid the plaintiff but she was struck by the middle or rear part of the truck. This evidence, defendant says, stands uncontradicted, except for the testimony of one Coletta, which it claims is manifestly and inherently false and improbable.

If we could agree with defendant's contention in this respect, we should have no difficulty in following the cases cited by it in support of its motion. But on a motion to direct a verdict for the defendant, all reasonable inferences that can be drawn from the testimony must be drawn in favor of the plaintiff. *Jacobs* v. *United Electric Rys. Co.,*

46 R. I. 230. And on such a motion, the trial justice is not at liberty to pass upon the credibility of the witnesses or to weigh the evidence. *Souza* v. *United Electric Rys. Co.,* 49 R. I. 430. Coletta's testimony was, therefore, at that stage of the case, to be considered by the trial justice as part of the plaintiff's evidence, unaffected by any belief on his part as to its credibility. From a careful examination of the transcript, we are convinced that there was evidence from which the jury might reasonably find for the plaintiff and that hence the trial justice did not err in denying the defendant's motion for a directed verdict.

Defendant's reliance upon *Conaty* v. *Galkin*, 52 R. I. 410, in support of its motion, is not justified by a careful reading of the opinion in that case. There the plaintiff's motion for a directed verdict was granted by the trial justice and his action was upheld by this court because, as was said in that opinion with respect to the defendant: "His self-contradictory testimony and his acts with respect to said stock are so inconsistent with his claim of nonownership of the same as to outweigh his testimony to the contrary and leaves no credible evidence in support of his defense to the present action." In that case there was no other evidence for the defendant upon which the case could go to the jury. In the instant case, in our view of the evidence, the testimony of Coletta was not inherently false or self-contradictory, and there was other evidence upon which the case should have gone to the jury. Therefore, *Conaty* v. *Galkin, supra,* is not in point, and the court in this case did not err in refusing to direct a verdict for the defendant.

The defendant further contends that the trial justice erred in his charge to the jury and in his refusal to grant certain of the defendant's requests to charge. The portions of the charge objected to are set out specifically as follows in defendant's brief: "The real gist of the case is this, did the child stand by its mother out in the street?" "The plaintiff . . . must prove . . . that the facts that the mother has testified to are the true facts . . . The

plaintiff must prove . . . that this child stood in the street. . . . Of course, if that child was behind the ice cart, you and I know that the truck could not hit it. . . . If the child was in a safe position, of course, it would not happen. . . . The mother was perhaps negligent, the mother was perhaps careless. . . . Now if the child was in the street as the mother says it was . . . and you decide that it was standing in the street as the mother says, then you must decide the question, Could the driver . . . have seen the child?" The defendant's contention with reference to these statements of the trial justice and to his refusal to charge as requested by it form the basis for its third, fourth, fifth, sixth, seventh, eighth and tenth exceptions. These exceptions were argued substantially as one, and we shall therefore consider them together without specifically stating each one.

Throughout the trial justice's charge, it seems to us, was an earnest desire to avoid any statement that would in any way prejudice either side. He seems to have appreciated thoroughly the danger that some chance remark on his part, some characterization of a witness or his testimony, might furnish grounds for a new trial and sought to avoid that circumstance. His statement that the mother of the plaintiff was negligent was not relevant or material to the issue in this case, and in any event it is clear to us that this statement could not have prejudiced the jury against the defendant.

The defendant claims that the above-quoted statements in the judge's charge were equivalent, in effect, to a direction of a verdict for the plaintiff. We cannot agree. On the contrary, taken either singly or in connection with the whole charge, from which they have been culled, we believe that if they constituted error it was only in a very technical sense and that such error was harmless. At the very outset of his charge, the trial justice sought to dispel from the minds of the jurors all passion and prejudice, if any existed against the defendant. He expressly and explicitly

warned the jurors, in the following words, not to permit such feelings to affect their judgment: "Now it is for you to ascertain whether or not the plaintiff's story as to how this thing happened is the true version of it. You are the judges of what the facts are, but you are not the final judges of the facts; you are the judges of what the facts are in this particular hearing, but your findings may be reviewed. You are simply one link in the chain and I am another link in the chain until the chain is finally welded and found to be perfect. I say this to you so that you will be most careful in finding what the facts are, and base your findings upon what the evidence is here, not upon any sympathy for this little child who has been crippled. That should not enter into your determination at all as to how this thing happened. Of course, we all have sympathy for the child, sorry the thing happened, but that is not for us to consider. The thing for us to consider is to ascertain, if possible, whether or not there is any legal liability resting upon this defendant in this case."

Counsel for the defendant in their argument below, as well as before us, and also in their brief, lay much stress on the fact that the mother testified that she had the plaintiff in a safe place, and contend that the trial justice disregarded this testimony in his charge to the jury. They further contend that the effect of this alleged failure of the trial justice to give consideration to this part of the mother's testimony was equivalent to requiring the jury to accept as a fact that the child stood out in the open and in a dangerous part of the street. This contention is not supported by the record. It appears to us that the trial justice sufficiently and fairly covered this phase of the case in his charge. The mother's testimony that she had the child in a safe place was merely a conclusion on her part. It was for the jury to decide this question, and the trial justice carefully and specifically charged them to consider carefully all the evidence bearing on the question of whether the plaintiff was in the street or behind the ice cart. The

charge on this point was as follows: "Take all the evidence into consideration and then ask yourselves, Did that child stand holding its mother's hand in the way the mother says it did, and if it did not, the plaintiff cannot recover. If it did, then you go on one step further and ascertain whether or not the driver of this truck used reasonable care in attempting to avoid the accident. Of course, if the child ran out into the street that is one matter, but the mother claims that she was in a safe position, and standing there holding her hand. Give that evidence such consideration as it merits to determine whether the child was in the street or behind the ice cart. There is the gist of this case, gentlemen." We find no error in these parts of the charge as given, which form the basis for exception three, nor in the refusal of the trial justice to grant the requests for instructions which form the bases for exceptions four, five, six, seven, eight and ten, as these requests were substantially covered in the charge so far as the defendant was entitled thereto.

Defendant's second exception is based upon the refusal of the trial justice to charge as follows: "The burden is on the plaintiffs to prove that the child's mother, in whose custody the child was, was free from contributory negligence. If, therefore, you believe that the mother failed to exercise the due care of a person of ordinary reasonable prudence under the circumstances by letting the child leave a place of safety and run into the truck, your verdict must be for the defendant." The same question of law is raised by the defendant's ninth exception to that portion of the charge of the trial justice wherein he stated that the negligence of the mother could not be attributed to the child. Defendant contends that the doctrine of imputable negligence should be applied in this State but the only Rhode Island case mentioned by its counsel in argument in support thereof is *Davis* v. *Joslin Mfg. Co.*, 29 R. I. 101. That case bears no relation to the instant case, and the court therein did not consider the question of imputable negligence. We

see no reason for applying it now for the first time in this State. If under all the circumstances, the plaintiff, considering her tender years, was not negligent in being in the street, then she was entitled to recover for any injury caused by the negligent act of the defendant's servant, notwithstanding any negligence of the plaintiff's mother.

In our view the defendant takes nothing by its ninth exception, as the charge as given correctly stated the law. The trial justice rightly charged that negligence of the mother did not excuse the defendant if the jury believed the defendant's driver was negligent, but that if the plaintiff suddenly ran out into the street, she could not recover. We find no error, therefore, in the actions of the trial court upon which defendant's second and ninth exceptions are based.

The defendant under its eleventh exception contends that the trial court erred in denying its motion for a new trial on the ground that there was no liability and that the damages awarded were excessive. We have covered the first ground somewhat fully in discussing the denial of defendant's motion for a directed verdict, but it may be well at this point to consider further the defendant's contention that the witness Coletta's testimony as to how the accident happened was contrary to the physical facts and therefore of no probative force.

The defendant invokes here the familiar rule that evidence which contradicts incontrovertible physical facts will not alone sustain a verdict. He claims that the testimony of defendant's expert witness Anthony clearly disposed of the credibility of plaintiff's witness Coletta and showed that his testimony in explanation of the happening of the accident was totally at variance with undisputed physical facts and laws. On the authority of *Willett* v. *Slocum*, 47 R. I. 136; *Smith* v. *Hopkins*, 131 A. (R. I.) 542 and *Williams* v. *United Electric Rys. Co.*, 167 A. (R. I.) 117, in which he asserts the facts were similar, counsel for the defendant argues that his client is entitled to a new trial. We have read the transcript of the testimony of these witnesses with this

point in mind and we cannot agree with the defendant that the evidence produced thereby presents a situation comparable to the one presented to the court in each of the cases cited. It does not seem to us that the trial court would have been justified in setting aside the jury's verdict on the ground that the testimony of Coletta was incredible and ought to have been disregarded, and that if it had been so disregarded by the jury, there would have been a lack of probative evidence for the plaintiff to sustain the burden of proving her case by a fair preponderance of the evidence. In our view the testimony did not show clearly a state of physical facts destructive of the testimony of the eyewitness, Coletta. We think the question as to how the accident occurred remained, at the conclusion of the evidence, one of fact to be determined by the jury on conflicting testimony. Under proper instructions, this phase of the case was given to the jury and they were properly charged as to the law with reference thereto. On the evidence and the law as thus given to them they have found for the plaintiff, and the trial justice has approved those findings in a rescript satisfactorily setting out his reasons for so doing.

Under our practice, where the trial justice has approved the jury's verdict, his decision will not be set aside, unless it is clearly wrong and fails to do justice between the parties. From our examination of the transcript, we cannot say that the verdict was manifestly wrong. The evidence, as said above, was conflicting and the credibility of certain of the witnesses on both sides was open to question. The jury has believed the story of the accident as told by the plaintiff's witnesses. That was within its province. The trial justice, who, like the jury, heard these witnesses testify and had an opportunity, which we have not, to observe them on the witness stand, agrees with the jury's findings. While this court is as capable of drawing inferences from undisputed facts as is the trial court, we have said repeatedly that the trial court is more favorably situated to weigh conflicting

evidence and to pass upon the credibility of the witnesses appearing before it. In considering a motion for a new trial, we are governed by these considerations and in the instant case there is nothing in the record which would justify us in departing from them and granting defendant's motion for a new trial on the question of liability.

On the question of damages, the trial justice has likewise expressed his approval of the jury's verdict. In his rescript, he indicates a belief that they are large but adds that, after listening to the testimony of Dr. Hammond at the trial and later reading over his testimony in the record, he is satisfied that the jury was warranted in returning the verdict which they did. We have, therefore, the deliberate judgment of the trial justice upholding the fairness and reasonableness of the jury's verdict.

What we have said with reference to the superior position of the trial justice in passing upon the credibility of the witnesses and in weighing their testimony on the question of liability applies with equal, if not greater, force to the question of damages. The verdict of $15,000 is large, but even though it is larger than this court would have awarded if in the jury's position, that is not sufficient ground for us to disturb it. The amount must be so unreasonably large as to indicate that it was due to prejudice or passion, or that even on a view of the evidence most favorable to the plaintiff, it reflects a judgment of the damages not as an award of compensation but as one that in whole or in part is based either on sympathy toward the plaintiff or on a vindictive or punitive spirit toward the defendant, or possibly on a mixture of both states of mind or is clearly the result of other improper influences or of mistake.

From an examination of the evidence, we cannot fairly say that the damages awarded to the plaintiff, even though generously substantial, pass beyond the boundary of legitimate compensation. The medical evidence in her favor leaves no question in our mind of the severity of the personal injuries suffered, the permanence of them, the

seriously increasing consequences flowing from them, the resulting prominent physical deformity and the continuance of pain and suffering for a long period of time. No medical testimony was offered by the defendant. We have, therefore, the uncontradicted testimony of Dr. Hammond for the plaintiff to the effect that she had undergone three operations and that she is left with one leg much shorter than the other, one inch shorter since January, 1930, and one and one half inches shorter since June, 1930; that the leg will undoubtedly become still shorter as she grows older; that she will need another operation then; that the circumference of the injured leg is decreasing and is three and one half inches less than that of the other leg and that there is no chance for it to increase, because the tissues and muscles are gone, leaving only skin over bone. The injury has been painful and will continue to be so. The operations were serious and painful and the manipulation required as treatment to help the leg is also painful. The doctor testified that the plaintiff is permanently deformed without hope of improvement, rather the reverse; and this testimony is not questioned by the defendant. In view of the approval of the verdict by the trial justice and our own consideration of the medical testimony, we cannot say that the jury's award of $15,000 damages to the plaintiff Mary Gallo is excessive.

The other case was brought by Peter Gallo, father of Mary Gallo, to recover for damages resulting to him from the same injuries to her which are involved in her case. He had no part in the accident and was not even present. The exceptions stated in the defendant's bills of exceptions in the two cases are the same and the rulings above made in the child's case apply to the father's case except as to the amount of damages awarded by the jury.

The verdict in his case was for $3,500 and we are of the opinion that the evidence does not justify so large an award. It appears from the testimony that his claim is based solely upon the expense which he has been put to and which may

be reasonably required of him in the future by reason of the accident, as there is no proof of any other element of damage. Expenditures to the date of the trial aggregate $1,345.38. We cannot see how the jury arrived at the amount of $3,500, except upon the assumption that all these expenses would be repeated in the future, and more besides. We do not think such an assumption is warranted. There is positive, uncontradicted testimony that the doctor's services will be necessary for some time to come and that another operation will be necessary. On the basis of the rate of charges as testified to in these cases, an allowance of $1,000 would be reasonable compensation to cover this future expense. There will also be some extra expense for specially made shoes and for other things incidental to the operation, but these should not be very great. Altogether, we think the father's reasonable claims will be met by the sum of $2,500.

In the case of Peter Gallo, Ex. No. 7460, all the defendant's exceptions are overruled save its exception to the refusal to grant its motion for a new trial, which is sustained on the ground of excessive damages. The case is remitted to the superior court for a new trial, unless on or before January 6, 1936, the plaintiff shall file in said court a remittitur of all said verdict in excess of $2,500. In case the plaintiff shall file such remittitur, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

In the case of Mary Gallo, Ex. No. 7461, all the defendant's exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict.

*E. Raymond Walsh*, for plaintiffs.

*Henshaw, Lindemuth & Baker*, for defendant.